**REEVES et al. v. PECOS COUNTY WATER IMPROVEMENT DIST. NO. I et al.**

**No. 2380.**

Court of Civil Appeals of Texas. El Paso.

May 22, 1930.

Rehearing Denied June 19, 1930.

Howell Johnson, of Ft. Stockton, and Wright, Yowell & Lewis, of San Angelo, for plaintiffs in error.

J. E. Starley, of Pecos, Jos. G. Montague and R. D. Blaydes, both of Ft. Stockton, and Brian Montague, of Del Rio, for defendants in error.

PELPHREY, C. J.

This is the second appeal of this case, the question on the former appeal being as to the correctness of the trial court's action in sustaining a general demurrer to the petition of plaintiffs in error.

This court affirmed the action of the trial court on the theory that the land having been included in a water improvement district, the rights of the parties became subject to the provisions of our statutes relative thereto. 293 S. W. 923. The opinion in that case contains a full and complete statement of the pleadings of plaintiffs in error, and reference is here made to that opinion in order that a better understanding may be had of the cause of action asserted by them.

Section B of the Commission of Appeals reversed the judgments of this court, 299 S. W. 224, 7 S.W.(2d) 67, and remanded the cause to the district court for a trial on the merits.

Plaintiffs in error contend that they are the owners of land and water rights in blocks 1, 2, and A, originally laid out by the Ft. Stockton Irrigated Lands Company, and are seeking to enjoin the use of water, originally dedicated to lands in those blocks, upon lands outside those blocks.

The case was tried to a jury and resulted in an instructed verdict in favor of defendants in error.

The court rendered judgment in accordance with such instructed verdict, and an appeal has been prosecuted to this court. There was an agreement entered into between the parties and will be included here. It reads:

"Agreement.

"The parties hereto do make and agree that the following are facts:

"First. That the Fort Stockton Irrigated Lands Company owned what is known as Blocks 1, 2, and A, in Pecos County, Texas, covering such boundaries as are shown upon a map hereto referred to and made a part of this agreement; that at the time said Fort Stockton Irrigated Lands Company

owned said land they also owned the irrigation system constructed to irrigate same, and the water supply thereon, the source of which said water supply being known as Comanche Spring and creek; that the Fort Stockton Irrigated Lands Company was organized as an irrigation corporation under the laws of the State of Texas about 1909.

"Second. That thereafter, to-wit, on the 12th day of July, 1913, said irrigation company sold the irrigation system to Oldham & Burget, and that thereafter, to-wit, on the 4th day of May, 1917, the said Oldham & Burget transferred said irrigation system to W. A. Hadden and said W. A. Hadden, Trustee, never sold or transferred any water rights to any lands outside of said Blocks 1, 2, and A.

"Third. That they did sell various lands and water rights in those Blocks.

"Fourth. That said Fort Stockton Irrigated Lands Company and said Oldham & Burget sold lands and water rights thereon within said Blocks 1, 2 and A during the period of time from 1909 to January 1, 1917; that said water right deeds were issued on two different forms, part of them being issued on one form and part on the other; that the amount of water rights so sold covered about 6700 acres within said blocks, and that they never sold any other water rights save and except they were upon one or the other of these two forms, said two forms of water right deeds being as follows:

"Number ——— ———Acres.

"Deed Of A Perpetual Water Right.
"Fort Stockton Irrigated Lands Company.
To
———

"This indenture, made in duplicate and entered into this ——— day of ———, A. D. 1917, by and between Fort Stockton Irrigated Lands Company, a corporation duly organized and existing under and by virtue of the laws of the State of Texas, party of the first part, and ——— of Fort Stockton, Texas, party of the second part, Witnesseth:

"That, in consideration of the sum of ——— Dollars ($———), Paid by said party of the second part to said party of the first part for a deed to the real estate herein described, and a deed to the water-right hereby conveyed, receipt of which sum is hereby acknowledged; and in further consideration of the stipulations and agreements herein entered into by the party of the second part, the said party of the first part does hereby sell and convey unto the said party of the second part (subject to the reservations, conditions, and agreements hereinafter contained to which the parties hereto expressly agree), a perpetual right to have carried and delivered through the main ditch and lateral ditches of the party of the first part from the waters of Comanche Creek or other sources in Pecos County, Texas, one-acre foot per annum for each acre of land herein described, or so much of said one-acre foot as may be required to properly irrigate said land. An acre-foot is described to be 43,560 cubic feet of water, which is an amount of water sufficient to cover an acre of land when properly leveled, to a depth of one foot. Said quantity of water shall be measured at the point of delivery from the Company's main ditch, or main laterals at a point to be selected by the first party, and the said water shall be delivered, distributed and measured from the said Company's main ditch and main laterals by the said party of the first part in such manner, at such times, and during such periods and seasons, and under such regulations and restrictions as the said first party may by its rules from time to time establish, add to, revise or amend. Said water shall be beneficially used under the direction and authority of the water superintendent of the said first party only for irrigation purposes upon the following described tract or tracts of land, situate in the County of Pecos and State of Texas, and upon none other, and which land is more particularly described as follows, to-wit:———

"Block No. 1, Fort Stockton Irrigated Lands Company, as shown upon the plat, filed for record by the party of the first part in the office of the County Clerk, Pecos County, Texas, on the ——— day of ———, 19—, reference to which said plat is hereby made.

"To have and to hold the same unto the said party of the second part, his heirs and assigns forever, upon the following express terms and conditions which the said party of the second part for ——— self, ——— heirs and assigns hereby expressly consents and agrees to.

"1. The water right hereby conveyed is granted by first party as an appurtenance to the land, hereinbefore described, for the purpose of irrigating that particular land for the cultivation and growth of crops, and this agreement shall not be construed to give second party any other or further title to said water or to permit its use upon any other land, or for any other purpose.

"2. First party shall deliver said water from its main ditch, or such of its main laterals as it may be found most convenient and practicable, at such point therein as it may select, and it may, when found more expedient, deliver such water through any private lateral, as provided in Clause 3 of this agreement. The gates, flumes, weirs or other arrangements through which the water hereby granted shall be supplied, controlled

and measured, shall be made, placed in position, controlled and maintained by first party, but the second party shall pay the cost of constructing, installing and keeping them in repair, payment for which may be enforced in the manner provided in Clause 8 of this agreement. Only employees of the first party shall have the right to turn any water on or off.

"3. Second party agrees to construct and maintain such lateral ditches as may be necessary to conduct the water from the points designated by first party for the delivery of water to second party and distribute it in a proper manner over his land, and to also construct and maintain all necessary waste ditches. First party reserves the right to determine the location and course of all laterals, and second party agrees that before constructing any laterals he will submit his plan of laterals for the approval of first party's water superintendent and make any changes therein that first party may require. Second party further agrees to maintain all of his laterals in proper condition, and if he fails to do so, first party shall not be bound to furnish water to second party until all laterals are put in proper condition, and in addition thereto first party reserves the right to go upon the land herein described and place such laterals in proper condition and collect the cost thereof from second party, as provided in Clause 8 of this agreement, but there shall be no obligation upon first party to put in laterals upon the land herein described, or the laterals upon any other land in proper condition, or to maintain them in such condition. First party shall have the right to determine what is "proper condition" of laterals. First party shall have the right without compensation therefor to construct new lateral ditches, or to extend or enlarge lateral ditches that may be constructed by second party, through and across the land herein described, and to conduct water over and across the land herein described for the purpose of supplying water to other land through such lateral ditches, and through any lateral ditches that second party may at any time construct, and shall have the right to go upon the land herein described for the purpose of constructing, maintaining or repairing such laterals. The second party shall have the right to use, for the purpose of irrigating the land herein described, any laterals that first party may construct under this provision, but the water so used shall be a part of the one-acre foot of water per year granted by this agreement, and shall be measured as provided in Clause 2 of this agreement.

"4. Second party further agrees that he will take from first party and use said water for irrigation purposes only during each irrigation season, and will pay to first party for maintaining and operating its irrigation system the sum of One Dollar and Fifty Cents ($1.50) per acre, per annum in three equal installments, due and payable on the first days of March, June and September, respectively, of each year, the payment of which shall be enforced, as provided in Clause 8 of this agreement.

"5. It is stipulated and agreed that if from any casual, unforeseen or unavoidable accident, or from any other cause beyond the control of said party of the first part, its successors or assigns, the full amount of water herein contracted for cannot be furnished as herein provided, the said party of the first part, its successors or assigns, shall not be in any way liable because of any such shortage or deficiency of water supply occasioned by any of said causes; and then, and in such case, the said party of the first part shall have the right to distribute the available water to all the holders of water rights in said water ditches and canals, pro rata, and for the purpose of doing so may establish and enforce such rules and regulations as it may deem necessary and expedient.

"6. The water to be furnished as herein provided shall not be permitted to run waste, and all water that may under any approved method of irrigation necessarily run off of the land irrigated, shall, when practicable, be returned by second party through waste ditches to laterals or other ditches, and such waste water so escaping shall not belong to second party, but shall belong to first party and may be sold by it to other consumers.

"7. It is expressly agreed that the first party shall not be liable to second party for any loss or damage that may occur from seepage, leakage, breakage, or overflow from the said canals, ditches, flumes, or laterals of the said party of the first part, or of any persons supplied with water by said first party, and all claims for damages from such causes that might hereafter arise or accrue to said party are hereby waived for the said second party, any statute, law or customs to the contrary notwithstanding.

"8. If second party shall fail upon demand to pay to first party the cost of constructing, installing and keeping in repair the gates, flumes, weirs and other appliances provided in Clause 2 of this agreement, or the cost of placing in condition such defective or improper laterals as said first party may see fit to place in proper condition, as provided in Clause 3 of this agreement, before the payment of the maintenance charges, as provided in Clause 4 of this agreement, then the first party is authorized to shut off the water supply herein contracted for from said second party and keep it shut off until said charges shall be paid in full. Such action, if taken, shall not relieve sec-

ond party from the obligation to pay such charges, but they shall be and remain a lien upon the land herein described, and any crops grown thereon, and may be collected and enforced as any other debt secured by a lien upon said land and crops. The waiver by first party of any one or more defaults, if any, of said obligations shall not be construed to be a waiver of the right to shut off the water for any subsequent default.

"9. It is agreed that all covenants, agreements, engagements and obligations hereby imposed upon or assumed by the respective parties hereto shall be construed as accruing to and binding upon the heirs, assigns and successors in interest of the parties hereto, respectively.

"In witness whereof the said Fort Stockton Irrigated Lands Company has caused duplicates of this indenture to be executed by its President and its corporate seal to be hereunto affixed, and attested by its Secretary, and the party of the second part has hereunto set his hand to said duplicates the day and year first above written.

"Fort Stockton Irrigated Lands Company.

"By ———— (Seal)
                    President

"Attest: ————————
            Secretary

"Number ———— ———— Acres

"Deed of a Perpetual Water Right.

"Fort Stockton Irrigated Lands Company.

"To ————.

"This indenture, made in duplicate and entered into this ———— day of ———— A. D. 19— by and between Fort Stockton Irrigated Lands Company a corporation duly organized and doing business under and by virtue of the Laws of the State of Texas, with a principal office and place of business in the City of Fort Stockton, Pecos County, Texas, party of the first part, and ———— of ————, party of the second part, Witnesseth:

"That in consideration of the sum of ———— Dollars ($————) paid by said party of the second part to the said party of the first part for this water right deed, and for a deed to real estate coincidently executed, receipt whereof is hereby acknowledged, and in further consideration of the stipulations and agreements herein entered into on the part of the party of the second part, as hereinafter set forth, the said party of the first part does hereby sell and convey unto the said party of the second part ———— acre feet per annum of its water, said water being a perpetual right, to have carried and delivered through the canal, flumes and laterals of the party of the first part from the waters of Comanche Creek, or other sources in Pecos County, Texas, or so much water as may be necessary to irrigate ————' acres of land, not exceeding, however, at the point of delivery, during any one year an amount of water sufficient to cover said tract of land one foot in depth, or so much of said one' foot, as may be required to properly irrigate said land, said water to be beneficially used under the direction and authority of the Water Superintendent of the said party of the first part; the delivery and measurement of said water to be made from said canal and its laterals by and in such manner, as said party of the first part may prescribe, from time to time for measuring said water, the said water to be used for irrigation purposes and domestic uses only and only upon the land situate, lying and being in Pecos County, State of Texas, and more particularly known and described as follows, to-wit: ————, as shown upon the plat, filed for record by first party in the office of the County Clerk of Pecos County, Texas, on the ———— day of ————, 1909, reference to which said plat is hereby made.

"To have and to hold the same unto the said party of the second part, his heirs and assigns forever.

"This deed of conveyance is made subject, however, to and under the express terms and conditions hereinafter set forth to all and every of which said terms and conditions the said party of the second part, for ———— self, ———— heirs and assigns, hereby expressly consents and agrees, which terms and conditions are as follows:

"1. The said party of the first part, its successors, or assigns, is to furnish and deliver said water through its said canal or main laterals at a point to be determined by the party of the first part, second party to dig and maintain lateral from Company's main lateral to his land.

"2. The said water shall be used for irrigation purposes and domestic uses only, and only upon the land above described, and under no circumstances shall said water or any portion thereof, be used upon or become appurtenant to any other tract or tracts of land, or for mining, milling, power or other purposes, not directly connected with or incidental to irrigation purposes upon said land.

"3. The said water shall be delivered by said party of the first part, its successors, or assigns, to said party of the second part, ———— heirs, or assigns, from its said canal or main laterals, and the manner of withdrawing and regulating the supply and delivery of said water from said system of irrigation works by said first party and the construction and maintenance of laterals and waste ditches by second party and other water users shall be prescribed by the said party of the first part, its successors or assigns, in accordance with such rules as it shall from time to time determine.

"The said party of the second part agrees that he will take and use said water from said first party during each irrigation season, and that he, his heirs or assigns, will pay therefor to said first party, its successors or assigns, for the maintenance, operation and repair of the' said canals, flumes, main laterals, reservoirs and other works constructed and operated in connection with the system of delivering water from Comanche Creek and other sources of water supply, whatever they are or may be, owned or controlled by the first party, its successors or assigns, for the delivery of water to the foregoing and other lands in Pecos County, Texas, annual pro rata assessments to be fixed by first party not to exceed One Dollar and Fifty Cents ($1.50) per acre per annum, payable in three (3) equal installments, the first of which shall become due and payable on March first, of each year and the other respectively on the first days of June and September in each year.

"It is expressly stipulated and agreed that if said assessments are not paid when due, said party of the first part, its successors and assigns, shall be authorized to shut off the water supply herein contracted for, from the use of the said party of the second part, his heirs or assigns, until the amount of any such said assessments due and remaining unpaid shall have been paid, but such action, if taken, shall not relieve the second party, his heirs or assigns, from liability for said water charges, and the waiver by first party of any one or more defendants shall not be construed to be a waiver of the right to shut off the water for any subsequent default.

"5. It is stipulated and agreed that if from any casual, unforeseen, or unavoidable accident, or if from any other cause beyond the control of 'said party of the first part, its successors or assigns, the full amount of water herein contracted for cannot be furnished as herein provided, the said party of the first part, its successors or assigns, shall not be in any way liable, because of any such shortage or deficiency of water supply occasioned by any of the said causes; and then, and in such case, the said party of the first part, its successors or assigns, shall have the right to distribute the available water to the holders of said water rights in said canal pro rata, and for the purpose of so doing, may establish and enforce such rules and regulations, as it may deem necessary and expedient.

"6. The said party of the second part for —— self, —— heirs, or assigns, in consideration of the agreements herein entered into on the part of the said party of the first part, hereby grants a right of way free of charge across the land herein described, for the necessary canals and laterals and waste water ditches of the party of the first part, said first party, its successors or assigns, to at all times have entire charge and control of such canals and laterals and all water carried through them, and said party of the second part, for himself, his heirs and assigns, also hereby waives any and' all claim or claims, which might hereafter arise or accrue to him, or them for loss or damage by reason of seepage, leakage, breakage, or overflow from said canals, flumes or laterals belonging to said party of the first part, either upon the lands hereinbefore described, or any other tract or tracts of land, owned by said party of the second part, anything in state statutes, law, or custom to the contrary notwithstanding.

"In witness whereof, The said party of the first part has caused an original and duplicate of this instrument, to be signed by its President, attested by its Secretary, with its seal attached, and the party of the second part has hereunto set his hand the day and year first above written.

"Fort Stockton Irrigated Lands Company
"By————(Seal.)
"————(Seal.)
"Attest:————
Secretary.

"Fifth. That said parties owned all of said lands in said Blocks 1, 2 and A; that all water rights owned by the plaintiffs and the defendants in this suit were issued by said company, or said Oldham & Burget, prior to January 1, 1917; that said block 1 contains 8528 acres; that said block 2 contains 5933 acres and said block A contains 108.35 acres, and that the plat of the said irrigation district contains and shows the lands that were included and made the Pecos County Water Improvement District Number One and petitioned by the water users and as confirmed by the order of the Commissioners' Court, contained 6493.58 acres watered land and 390 acres of dry land.

"Sixth. That the plaintiffs' lands under which they are claiming water rights are all situated in said three blocks of land described; that the lands of the defendants, Rooney, Bihl and Mitchell, from which water rights were transferred, are located within Block 1, 2 and A."

In the deed from Oldham and Burget to W. A. Hadden, trustee, are found the following exceptions and reservations:

"Exceptions and Reservations.

"1. There are now outstanding certain contracts executed by the grantors herein or by their predecessors in title, Fort Stockton Irrigated Lands Company for the conveyance, upon the terms and conditions in said contracts limited of certain tracts and

parcels of irrigated lands in Block One and Two, Fort Stockton Irrigated Lands Company, together with certain water rights to be made appurtenant to said lands.

"The grantors reserve from this conveyance the said water rights with the right, power and privilege to the said grantors to make, execute and deliver to the persons entitled thereto good and sufficient water *deed* as in said contracts provided. Or, in the event of forfeiture of any such contracts, grantors shall have the right to make new contracts for the conveyance of said water rights, covering same terms and conditions or may by their deed, directly apply water upon said lands, or other lands of equal acreage in lieu thereof.

"2. Second party will, without expense or charge therefor, upon demand of first parties join in the execution of water deeds to contract holders as they may become entitled to deeds in their contracts hereinbefore referred to.

"3. This conveyance is made expressly subject to all outstanding deeds of water rights and contracts for water rights appurtenant to lands in either Blocks one or two, Fort Stockton Irrigated Lands Company, or Block 'A,' and whether said water right deed or contracts for water rights were executed by the Fort Stockton Irrigated Lands Company or by the Grantors herein, and the said grantee hereto expressly assumes and agrees to carry out and perform all and singular the terms and conditions of said several water deeds or contracts to be kept and performed by either the said Fort Stockton Irrigated Lands Company or the said grantors herein.

"4. This conveyance is also made upon the further limitation that the said second party shall not and will not hereafter give or grant any additional water rights or make water rights appurtenant to any lands in Block One and Two, Fort Stockton Irrigated Lands Company which such additional water rights would, when added to those now covered by deeds or contracts, therefore, as hereinabove described, make water rights appurtenant to an aggregate of lands in both Blocks One and Two, and Block A, in excess of 7000 acres; and further, that grantee will not contract nor apply water during the irrigation season upon any lands outside of Blocks One and Two and Block A, provided, that nothing herein contained shall be construed as curtailing or in anywise affecting or limiting the right of the grantee to make an additional charge for water supplied to any portion of said 7000 acres in excess of one acre foot; and provided further, that in the event the volume of water supplying said irrigation plant shall be increased beyond sixty cubic feet per second of time, said grantee shall have the right to make such disposition of such excess of water above said sixty cubic feet second as he may desire, anything herein to the contrary notwithstanding.

"5. Grantee agrees to pay all taxes which may be assessed or levied against the property herein conveyed and which are not now due and payable.

"This contract shall inure to and be binding upon the respective heirs, grantees, successors and assigns of the parties hereto, and as evidence of this assent to all of the terms, conditions and limitations of this agreement and deed the said grantee does also sign and execute the same.

"To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said William A. Hadden, Trustee, his heirs and assigns forever; and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said William A. Hadden, trustee, his heirs and assigns forever, against every person whomsoever lawfully claiming or to claim the same or any part thereof, save and except as hereinbefore provided:

"Witness our hands this 4th day of May, A. D. 1917.

"James W. Oldham

"William B. Burget                Grantors

"William A. Hadden, Trustee, Grantee."

And in the deed from W. A. Hadden, trustee, to the Pecos County Water Improvement District No. 1, the following provisions are found:

"It is expressly understood and agreed that this deed is made subject to all the exceptions and reservations made in the deed from James W. Oldham and William B. Burget to William A. Hadden, Trustee, of record in office County Clerk Pecos County, Texas, Volume No. 36, at page 224, et seq., to which reference is here made, grantee, its successors and assigns hereby accepting and agreeing to abide by and carry out all the terms and conditions in said deed imposed on the Grantees in said deed.

"It is further expressly understood and agreed by the parties to this deed that this deed shall inure to and be binding upon the respective heirs, grantees, successors and assigns of the parties hereto, and as evidence of the assent of the grantee herein to all of the terms, conditions and limitations of this agreement and deed the said The Pecos County Water Improvement District No. One, the grantee herein, does also sign and execute the same."

Section B of the Commission of Appeals on motion for rehearing has this to say relative to the pleadings of plaintiffs in error:

"It appears that the formation of blocks 1,

2, and A was a result of the general scheme adopted by the owners of the land and the water company to limit the supply of said water to said area of land as the guaranty to purchasers of the land out of this subdivision that the water rights appurtenant thereto would be used exclusively thereon. The deed from the original owners of the land to water rights contained the restrictive clause that such water was not to be used on any other land not included in said blocks. Under this general scheme it was implied in each deed that the purchaser had the right to allow and enforce these restrictions and was entitled to have the general plan and scheme carried into effect." 7 S.W.(2d) 67.

The same matters were pleaded in that appeal as are here included in the agreement of the parties, therefore, at the outset of the consideration of the questions here presented, we find that the plan and scheme are shown, and that plaintiffs in error are entitled to have that plan or scheme carried into effect.

It is, however, contended by defendants in error that a court of equity should not enjoin the use of the water on other lands than those to which the rights were restricted, for the reason that no injury is shown to have resulted to plaintiffs in error, and, in the absence of such showing they were not authorized to invoke the equitable powers of the court.

In this country where water is peculiarly valuable on account of its scarcity we would not be willing to say that if there existed a surplus of water over the amount necessary to properly irrigate the crops on blocks 1, 2, and A, that the owners of water rights therein could invoke the powers of a court of equity to prevent the use of such surplus on lands outside that area. In fact, we are of the opinion that such could not be done.

If it be shown that all the water is needed for the proper cultivation of the land within the area, then certainly those entitled to the use of such water will have their remedy.

The record here reveals that on the canal leading to survey 2, block 146 (the Rooney land), there is considerable waste and seepage, and that the witness Patterson has not been allowed enough water for his land by the manager of the water district.

This is not sufficient to show that the use of the water on the land outside the area has caused a shortage in the area, nor that there now exists a shortage of water to properly cultivate the lands within the area.

Plaintiffs in error, as shown by bill of exceptions No. 2, asked the witness Dan Patterson if he had, since owning his land, had enough water to irrigate his farm. To which question an objection was made and sus-

tained. If he had been permitted to answer he would have testified that he never at any time had enough water to properly irrigate his land.

It is further shown by bill of exceptions No. 4 that the court sustained objections to a question addressed to the same witnesses as to whether his crop had suffered from lack of water since water had been put on the 100-acre tract, and that the witness would have testified that his crop did suffer.

Bill of exceptions No. 5 shows that the same witness was asked whether the additional water that goes to the 100-acre Rooney tract, if left within the district as originally formed, would materially aid in making crops to the owners of the land therein; that the court sustained an objection to the question, and that he would have answered that such crops would have been materially aided.

It is further shown by bill of exceptions No. 6 that Chas. Flynt was asked whether his farm had or had not suffered from lack of water, to which question the court sustained an objection; and that he would have answered that his farm had so suffered.

This excluded evidence, we think, was material on the question of whether the water was needed within the district, and as to whether any injury had resulted to the owners of the land therein from it use outside.

The trial court in excluding the evidence seems to have done so on the theory that the landowners in the district were entitled to only one acre foot of water per annum, and that, if they had received that amount of water, any evidence as to the sufficiency of the water to properly cultivate their crops was immaterial.

We think that theory is contrary to the views expressed by the Commission of Appeals, supra, and that the exclusion of the evidence above referred to constitutes reversible error.

The judgment of the trial court is accordingly reversed, and the cause remanded.

WALTHALL, J. (dissenting).

I am unable to agree with the majority members of the court in remanding the case for a new trial, and so will briefly express the grounds of my dissent.

This case on the second appeal is not essentially different from the case on the former appeal. On the former appeal a writ of error was granted. On the hearing the Commission of Appeals, section B, 299 S. W. 224, and on motion for rehearing, 7 S.W.(2d) 67, held, in effect, that the deeds to the water rights from the original owners of the land contained restrictive clause that such water may not be used on any other land not included in blocks 1, 2, and A; that under the plan the effect of the restriction was to have

all the water owned by the district applied to land in the original areas. Under that construction of the deed I am of the opinion that it would be immaterial whether a conveyance of water to lands outside the original area would cause a shortage of water or damage to the owners of lands in the original area or not. It would be immaterial whether there would be a surplus of water above the amount necessary to properly irrigate the lands in blocks 1, 2, and A, if the water could not be conveyed to lands outside said blocks by reason of said restrictions.

The case should be reversed and rendered.

### On Motion for Rehearing.

PELPHREY, J.

Defendants in error in their motion for rehearing contend that as the opinion is written it would appear that the exceptions and reservations in the deed from Oldham & Burget to W. A. Hadden, trustee, were stated as part of the agreement of the parties which precedes them. We do not agree with such contention.

The quotation of the agreement concludes on page 8 of the opinion, and by proper marks is shown to be a quotation. Then appears the words of the writer, clearly shown to be such, with reference to the provisions of the deed to Hadden, trustee. Then follows, properly shown to be a quotation, the exceptions and reservations.

We have examined the different grounds presented in the motion for rehearing, and with the above statement are of the opinion that it should be overruled.

WALTHALL, J.

I still adhere to my view expressed in the original hearing.